## CIRCUIT COURT OF ALBEMARLE COUNTY

Wendall L. Winn, Jr.,
and Fredson T. Bowers, Jr.,
Co-Executors of the
Estate of Fredson T. Bowers

v.

William W. Stevenson et al.

February 3, 1992

Case No. 8086-C

BY JUDGE PAUL M. PEATROSS, JR.

*Statement of Facts*

On August 6, 1987, Fredson T. Bowers and his wife, Nancy Hale Bowers, sold a portion of real property to William W. Stevenson, Trustee of the 659 Land Trust, retaining the plot now at issue as their place of residence. Upon the death of Nancy Hale Bowers on September 24, 1988, her undivided one-half interest in the remainder of the property passed under her will to her three granddaughters, subject to a life estate in her husband. At the death of Fredson T. Bowers on April 11, 1991, his one-half interest in the property passed to his beneficiaries.

On behalf of the Bowers' heirs, the co-executors of the estate of Fredson T. Bowers listed the property in question for sale. The executors originally offered the property to Mr. Stevenson at their asking price. Mr. Stevenson advised the executors that he was unwilling to meet that price and later filed an affidavit in the Albemarle County Clerk's office claiming that he had a right of first refusal to purchase the property, thereby creating a cloud on title.

The co-executors of the Bowers estate subsequently filed this suit for declaratory judgement requesting this court to declare that Mr.

Stevenson has no right, title, or interest in or right of first refusal on the subject property.

## Question Presented

This court must consider whether, under Virginia law, a right of first refusal on the sale of land binds the heirs of the obligee, where the contract clause in question does not expressly include heirs or assigns as parties to the contract and makes the exercise of the right of first refusal specifically contingent on the personal decision of the obligee to sell the land in question.

## Discussion

The contract clause which grants Mr. Stevenson the right of first refusal on the Bowers' adjacent property is to be found in the closing statement executed between the parties, and not in the deed itself. As a result, it is not a real covenant relating to land but simply a term of the contract between Buyer and Seller.[1] This does not mean that Mr. Stevenson's right of first refusal is a mere contract right, however. Virginia law makes clear that such a right represents an equitable interest in property, which may be specifically enforced in a court of equity. *Lake of the Woods Association, Inc. v. McHugh*, 238 Va. 1, 6 (1989). Rather, this court finds that an examination of the clause in question, and particularly a determination of its binding effect on the Bowers' heirs, must be governed by recognized principles of contract interpretation.

In construing a contract provision, the threshold question is whether the terms are ambiguous. *Smith v. Smith*, 3 Va. App. 510, 513 (1986). This is a question of law for the court. *Wilson v. Holyfield*, 227 Va. 184, 187 (1984). An ambiguity exists where the contract language is susceptible to more than one reasonable interpretation. *Amos v. Coffey*, 228 Va. 88, 92 (1984). However, the mere fact that the parties to the contract attribute different meanings to the same term does not imply the existence of an ambiguity where otherwise there is none. *Wilson v. Holyfield*, 227 Va. at 187.

---

[1] A convenant relating to land is an agreement between two or more parties, by deed and in writing, signed and delivered, by which either of the parties pledges to the other that something is either done, or will be done, or will not be done, or stipulates to the truth of certain facts. 5A Michie's Jurisprudence, "Covenants," sect. 2 (1991).

Where there is no ambiguity in the terms of a contract, a court must construe it as written and is not at liberty to search for the meaning of provisions beyond the instrument itself. *Berry v. Klinger*, 225 Va. 201, 208 (1983). If the intent of the parties is evident in the words that they have chosen, the court is bound to give full effect to what the written instrument plainly declares. *Great Falls Hardware Co. v. South Lakes Village Center Associates*, 238 Va. 123, 125–26 (1989).

In the case at bar, the disputed clause provides that the "Buyer shall have first refusal of any of the balance of Tax Map 45 Parcel 29 at any time they [Sellers] decide to sell." The court finds that this contract provision is *not* ambiguous as a matter of law. The language of the clause plainly limits the future right of the Sellers, Nancy and Fredson Bowers, to sell their remaining property by compelling them to offer it first to the Buyer, William T. Stevenson, when and if they decide to sell. *See Landa v. Century 21 Simmons & Co.*, 237 Va. 374, 381 (1989); *Cities Services Oil Co. v. Estes*, 208 Va. 44, 47 (1967). Since the term "sell" is commonly and ordinarily understood to mean an act of giving up property for money that the buyer either pays or promises to pay in the future, *Bennett v. Dave*, 277 S.E.2d 617, 619 (W. Va. 1981), the right of first refusal was not triggered when the Bowers devised their property to their heirs in their respective wills. The critical question for this court to consider at this time is whether the parties' successors-in-interest are bound by the terms of this contract.

*The Parties' Intent*

In *Weisz v. David Nassif Co.*, 8 Va. Cir. 167 (1986), the Circuit Court of Fairfax County considered this question in the context of a right of first refusal for the sale of land. The case involved a real estate contract in which the Buyer of a parcel of land was granted a right of first refusal to purchase the remainder of the adjacent land owned by the Seller. Unlike the instant case, the right of first refusal in *Weisz* was made expressly available to the Buyer's "successors and assigns." Because of this term, which applied only to the Buyer's successors, the court concluded that both parties must have been aware that the contract would be binding on their successors. *Id.* at 168. Furthermore, the court reasoned that the failure to use those words throughout the contract did not indicate the parties' intent not to bind their successors to other portions of the contract. *Id.*

As a result, the contract survived the death of the Seller, even though her heirs were not expressly bound. *Id.*

In the case now before the court, there is no indication that either party considered the contract right of first refusal to be binding on their successors in interest. By the Buyer's own admission, no words or references to heirs or assigns may be found anywhere in the closing statement. Virginia courts have held that the omission of a particular term from a contract reduced to writing shows a specific intent to exclude it. *First National Bank v. Roy N. Ford Co.*, 219 Va. 942, 946 (1979). Consequently, this court must conclude that the parties to the present contract did not intend to bind their successors, but instead included the preemptive right clause to create a personal obligation limited to the Sellers, Nancy and Fredson Bowers.

*Survival of Contractual Obligation*

Although neither party in the instant case expressed an intent in their agreement to bind their successors in interest, the contractual right of first refusal could nonetheless survive the Bowers' death as a matter of Virginia law. In general, the death of a party to a contract does not extinguish the contract if it is capable of being fulfilled by his personal representatives; the law presumes that the parties to a contract bind not only themselves but their personal representatives as well. *Looney v. Belcher*, 169 Va. 160, 170 (1937). Thus, Virginia courts have held that executors will be held liable on all contracts of the testator which are broken during his lifetime, and, with the exception of contracts in which personal skill or taste is required, on all contracts broken after his death. *Id.* at 171.

Following this rule, the Fairfax Circuit Court has held that a seller's "survivors" might be bound by a contractual right of first refusal as a matter of law. *Weisz v. David Nassif Co.*, 8 Va. Cir. at 169. Such a right, the court noted, involves no matters of personal skill or taste, but instead merely requires the seller's personal representative to offer the property for sale to the original buyer before it is sold to another party. *Id.* As a result, the contract will survive the death of the decedent party, at least insofar as his personal representatives are concerned. *Id.*

In the case at bar, however, the matter of a contract's binding effect on a decedent party's executor is wholly irrelevant, since an executor or personal representative does not occupy the same legal position as an heir or devisee. The facts of this case indicate that the

property in question is no longer a part of the Bowers estate, but has passed on to the beneficiaries. Accordingly, the Bowers' co-executors are not acting in their capacity as personal representatives of the Bowers, but are instead offering the property for sale on behalf of the Bowers' heirs.

It is true that, under the rule established in *Looney v. Belcher*, the Bower's contractual obligations are binding on their executors in their capacity as personal representatives.[2] However, it is well-settled under Virginia law that claims and judgments against a decedent's personal representatives cannot bind the heirs or in any manner affect them. *Peirce v. Graham*, 85 Va. 227 (1888); *Brewis v. Lawson*, 76 Va. 36 (1881). Thus, while a contractual right of first refusal is enforceable against the obligee's executors in their capacity as the personal representatives of the decedent, there is no basis under Virginia law for extending that rule to include the decedent's heirs and devisees.

## Conclusion

The plain language of the contract between the Bowers and Mr. Stevenson demonstrates absolutely no intent, on the part of either party, to bind their successors in interest. Furthermore, the fact that the land has already passed to the Bowers' heirs indicates that the executors of the estate are acting on behalf of the heirs rather than as the personal representatives of Nancy and Fredson Bowers. As a result, this court finds that neither the Bowers' heirs nor their executors are bound by the terms of the contract, and that the right of first refusal no longer applies to the property in question.

In reaching this decision, the court is mindful of the possibility of strategic behavior on the part of the grantor of a right of first refusal. In the instant case, for example, it might have been a simple matter for the Bowers to avoid their contractual obligations through an inter vivos gift of the subject property to a third party. The overwhelming majority of jurisdictions have found that such a gift will not trigger

---

[2] This implies that the right of first refusal would have been triggered if the executors of the estate of Mr. Bowers had made an independent decision to sell the disputed property to satisfy a debt of the estate upon the decedent's debt. In the instant case, however, the executors are seeking to sell the property on behalf of the Bowers' heirs and not in their capacity as the personal representatives of the decedent.

the right of first refusal. *See, e.g., Mericle v. Wolf,* 562 A.2d 364 (Pa. Super. 1989); *Bennett v. Dove,* 277 S.E.2d 617 (W. Va. 1981). If the contract obligation did not remain binding on the third party in such a situation, the holder of the right of first refusal would be left with no recourse when the third party decided to sell.

Recognizing this concern, a number of courts have found that the right of first refusal will remain binding on third parties who receive a subject property through an inter vivos gift. *See, e.g., Isaacson v. First Security Bank of Utah,* 511 P.2d 269 (Idaho 1973); *Kroehnke v. Zimmerman,* 467 P.2d 265 (Colo. 1970). One court has gone so far as to create an affirmative duty not to make their own performance of a right of first refusal impossible by conveying the land to a third person. *Wilson v. Whinery,* 678 P.2d 354 (Wash. App. 1984).

In addition, Virginia courts have shown some hostility towards attempts to circumvent the right of first refusal through strategic behavior. For example, a variance in the amount of land to be conveyed cannot be used to defeat a right of first refusal. *Landa v. Century 21 Simmons & Co.,* 237 Va. at 383. The right of first refusal will even be upheld as against a judicial sale. *Cities Services v. Estes,* 208 Va. at 50.

In the instant case, the potential for abuse is remote; the court can envision no situation in which a party to a contract would be willing to die in order to defeat a right of first refusal. In light of the potential for abuse in different circumstances, however, this court must necessarily limit its holding to the situation in which an interest in property subject to a right of first refusal is transferred through a will. The survival of a right of first refusal when property is transferred through an inter vivos gift appears to remain an open question under Virginia law.