**TEXACO ANTILLES LTD.**, a/k/a Texaco Antilles Limited and Texaco Caribbean, Inc., Defendants–Appellants,

v.

**Margaret CREQUE, Plaintiff–Appellee.**

No. CIV.2001–122.

District Court,
Virgin Islands,
St. Thomas Division.

Considered: May 16, 2003.

July 28, 2003.

Adriane J. Dudley, Esq., Richard R. Knoepfel, Esq., Dudley, Clark & Chan, St. Thomas, VI, for Defendants–Appellants.

Michael C. Dunston, Esq., St. Thomas, VI, for Plaintiff–Appellee.

Before RAYMOND L. FINCH, Chief Judge, District Court of the Virgin Islands; THOMAS K. MOORE, Judge of the District Court of the Virgin Islands; and DARRYL DEAN DONAHUE, Judge of the Territorial Court, Sitting by Designation.

## OPINION OF THE COURT

PER CURIAM.

### I. STATEMENT OF THE CASE

This action involves a dispute over a 1963 contract between Margaret Creque ["Creque" or "appellee"] and Texaco Antilles Ltd. ["TAL"] in which TAL granted Creque a right of first refusal to purchase real estate ["the property"] owned by TAL in St. Thomas. In 1973, as part of a corporate restructuring directed by Texaco, Inc., TAL transferred to Texaco Caribbean Inc. ["TCI", collectively with TAL, "appellants"] all of its assets and liabilities in several Caribbean islands including the U.S. Virgin Islands. Among the assets transferred was the property which was the subject of the 1963 contract between Creque and TAL.

In 1995, more than twenty years later, Creque learned of the transfer of the property from TAL to TCI, and notified appellants that she wished to exercise her right of first refusal. Appellants responded that the transfer was an intra-company transaction that did not trigger the right of first refusal. Creque filed suit in the Territorial Court on June 6, 1996, seeking damages and transfer of the property to her.

In a Memorandum and Order entered May 2, 2001, the Territorial Court denied appellants' renewed motion for summary judgment, reiterating its opinion that the transfer of assets and liabilities between TAL and TCI was a sale, and that a sale is a contract. The court reasoned that there must have been an offer because: "[t]here can be no contract without an offer. Thus, having proven the existence of a contract, one has simultaneously proven that there was an offer, which was accepted." Having bootstrapped an offer out of the transfer of assets, the trial judge then concluded that whether that offer was *bona fide* for the purpose of triggering Creque's right of first refusal was a factual question to be determined by the jury. (App.384.) On May 7, 8, and 9, 2001, a jury trial was held, resulting in a verdict in favor of Creque. The court entered judgment on May 18, 2001. On June 12, 2001, appellants filed this timely appeal.

## II. ISSUES FOR REVIEW

The main issue before this Court is whether the Territorial Court properly denied appellants' renewed motion for summary judgment.

## III. JURISDICTION

This is a civil action arising out of a contract involving real estate on St. Thomas. Jurisdiction in the Territorial Court of the Virgin Islands arises pursuant to section 76 of Title 4 of the Virgin Islands Code. Before the Appellate Division is an appeal from a final order entered by the Territorial Court on May 18, 2001, after a jury trial. The Appellate Division has jurisdiction pursuant to section 33 of Title 4 of the Virgin Islands Code.

## IV. STANDARD OF REVIEW

This Court exercises plenary review over the order denying summary judgment, and must "apply the same test that the lower court should have utilized." *Paul v. Elec. Ave.,* Civ.App. No.1999/055, 2001 U.S. Dist. LEXIS 14261, *4 (D.V.I.App.Div.2001) (citations omitted).

A moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Summary judgment may be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Once the moving party properly supports its motion for summary judgment, the non-moving party must establish a genuine issue of material fact in order to preclude a grant of summary judgment. The evidence and inferences drawn therefrom must be viewed in the light most favorable to the nonmovant. "The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment."

*Id.* at *6–7 (citations omitted).

## V. STATEMENT OF FACTS

On June 27, 1963, TAL, a Canadian corporation which was a wholly owned subsidiary of Texaco Inc., acquired title to Lot No. 1, Estate Demerara, St. Thomas. Simultaneously, TAL conveyed to Creque the north portion of that parcel, designated as Lot No. 1B Estate Demerara. The portion of the parcel retained by TAL ["the property"] is presently the location of the Texaco gasoline station on Veterans Drive opposite the entrance to Frenchtown on St. Thomas.

On the same day, TAL and Creque entered into an option contract ["the contract"] whereby TAL granted to Creque the right of first refusal to purchase the property "on the same terms and at the same price as set forth in a bona fide offer to purchase ...." (App.1657.) The contract also gave Creque the right to take over the tenancy and operation of the gas station on the property in the event of a change in tenancy. In 1987, Creque exercised that option and has since been operating the Texaco gas station at that location through a corporation owned by her.

In 1973, the Canadian government proposed changes to its tax laws that would have made all the income of TAL subject to Canadian income tax. At that time, TAL, being a non-resident corporation of Canada, had no income tax liability to Canada. (*Id.* 1675.) As a result, in September 1973 the general tax counsel and general counsel of Texaco Inc. determined that TAL should transfer all of its assets, liabilities, and operations to another wholly

owned subsidiary, TCI, a Delaware corporation. They sought approval of the vice president and the chairman of the board of Texaco Inc. to effect the transfer, which was granted. (*Id.* 1679, 1683, 1692.) The transfer was accomplished on May 16, 1974, by deed from TAL to TCI. (*Id.* 1711.) Appellants did not notify Creque of the corporate restructuring and transfer, although the deed was promptly recorded in the public records at the Office of the Recorder of Deeds.

In 1995, Creque discovered that TAL had transferred the property to TCI in 1973. She claims that this transfer triggered her right of first refusal. This suit followed.

## VI. DISCUSSION

**A. Whether the Territorial Court properly denied Appellants' Renewed Motion for Summary Judgment.**

■ The Territorial Court erred in denying appellants' motion for summary judgment, because the appellee failed to set forth any evidence from with the court could determine that a disputed issue of material fact existed regarding whether TCI made a "bona fide offer to purchase" the property from TAL. Viewing all the evidence presented in the light most favorable to Creque, the transfer of the property from TAL to TCI did not constitute a "sale" of the property resulting from a "bona fide offer" for the purchase of the property which triggered Creque's right of first refusal.

The contract by which TAL gave Creque the right of first refusal premised that right on a "bona fide offer to purchase" the property. We agree with appellants that the corporate restructuring which required the transfer of the property from TAL to TCI did not trigger Creque's right. TCI did not make a "bona fide offer to purchase" the property; TAL did not "accept" that offer; no bona fide arm's length sale

occurred; and full consideration was not paid. In short, this transaction was not a sale upon a bona fide offer to purchase. The decision to transfer the property was made by Texaco, Inc., which wholly owned and controlled both TAL and TCI. Texaco, Inc. made a business decision to shift its assets from one wholly owned subsidiary to another wholly owned subsidiary. While TAL and TCI are separate corporate entities for tax and many corporate and business purposes, they had no control over the terms of this transaction and certainly did not deal with each other at "arm's length." TAL and TCI shared the same directors, officers, and ownership; they were not "strangers to the transaction." *See Landlord and tenant*, 1976 WL 38533, 70 A.L.R.3d 203, 206 (1976) ( [C]ourts determining "whether a particular conveyance constituted a 'sale' . . . have placed emphasis upon the presence or absence of 'arm's length dealing' between the [parties].").

This issue is similar to one confronted by the Supreme Court of Wyoming in *McGuire v. Lowery,* 2 P.3d 527, 532 (Wyo. 2000). The court there held that "for a transaction to constitute a "sale" and trigger a first right of refusal, it must involve an arms-length transaction resulting in an actual change in control of the burdened property.". Appellants cite other cases supporting the proposition that for a "sale" of property to trigger a right of first refusal, it must involve a bona fide arms-length transaction. *See Harris Propane, Inc. v. Miss. Transp. Comm'n,* 827 So.2d 6, 12 (Miss.Ct.App.2002) ("A first-refusal right has no realistic application when the "offer" is from a forced sale . . . ."); *Joseph v. Dever,* 1986 WL 9340 at *21 (Ohio App. 1986) ("To constitute a sale [that would trigger the right of first refusal], there must be an arms length transaction, between a willing buyer and a willing seller, in the open market."). Courts also have

held that a party's contractual right of first refusal does not vest in cases where the property is conveyed to a relative of the grantor; where the motives of business convenience prompted the transfer to the grantor's wholly owned subsidiary; or where the transfer of property flowed from one corporation to another corporation owned and controlled by the same interests. *See Kroehnke v. Zimmerman,* 171 Colo. 365, 467 P.2d 265 (1970); *Straley v. Osborne,* 262 Md. 514, 278 A.2d 64 (1971); *Sand v. London & Co.,* 39 N.J.Super. 513, 121 A.2d 559 (1956).

Appellants presented factual and legal support for their position that there was no bona fide offer to purchase the property necessary to trigger appellant's right of first refusal. Appellants' Exhibits "G" through "M" (App.150–176) support their position that the transfer of the property was a business decision by Texaco, Inc., over which they had no control and appellee failed to present the necessary scintilla of contrary evidence that the TAL/TCI transaction triggered her preemptive right. The Territorial Court therefore erred in denying appellants' renewed motion for summary judgment and allowing the case to proceed to trial.

Because the Territorial Court's decision will be reversed on the grounds that it erred in denying appellants' motion for summary judgment, we will discuss only briefly appellants' claims regarding the jury's findings, the judge's instruction to the jury, and the admissibility of expert testimony presented at trial.

**B. Whether the record contained sufficient evidence to support the jury's verdict.**

■ A jury verdict will be upheld unless it is clearly against the weight of the evidence, viewing the evidence and the inferences to be drawn therefrom in the light most favorable to the party which secured the verdict. This standard of review is "quite limited;" an appellate court must "view the evidence in the light most favorable to the party which obtained the verdict below." *Herman v. Hess Oil Virgin Islands Corp.,* 524 F.2d 767, 769 (3d Cir. 1975) (citations omitted).

■ This case should not have reached a jury, but when it did, the jury should have found that the transfer of the property from TAL to TCI did not trigger appellee's right of first refusal. Appellee presented no evidence from which the jury could reasonably determine that TCI made a "bona fide offer to purchase" the property from TAL, and that the deal was an arm's length transaction. Even viewing the evidence presented in the light most favorable to appellee, the jury could not have found that the TAL/TCI transaction amounted to a bona fide offer and acceptance.

The Territorial Court instructed the jury that "in considering whether an offer for property is bona fide, you may also consider the amount of the offer, whether such offer was the result of arms length transaction for or near the fair market value." (App.1484.) The fair market value of the property, according to appellee's expert, Terry Streeter, was approximately $500,000 in 1973. (App.1020.) Also according to Mr. Streeter, TCI allegedly "paid" $162,153 for the property. (App. 1040.) To the extent that the jury found that the offer was bona fide based on the price paid, it made an error.

To the extent that the jury found its finding of a bona fide offer on a finding of an arms length transaction, they were similarly without evidentiary justification. The evidence presented clearly established that the transfer of the property from TAL to TCI was a corporate restructuring directed by the parent company Texaco, Inc., and was thus not an arms length

transaction for purposes of offer and acceptance under contract law. The evidence established that Texaco, Inc. orchestrated and controlled the entire transfer of assets from TAL to TCI.

There was no evidence presented tending to prove an arms length transaction; the jury's finding of a bona fide offer to purchase giving rise to appellee's right of refusal constitutes reversible error.

## C. Whether the Territorial Court properly instructed the jury.

■ A jury charge regarding applicable law is subject to plenary review, but where the substantive legal content of the instructions accurately states the law, a court's refusal to use specifically requested language is reviewed for abuse of discretion. *Virgin Islands v. Albert*, 89 F.Supp.2d 658, 667 (D.Virgin Islands 2000) (citations omitted).

Appellants argue that the Territorial Court erred in failing to instruct the jury on appellants' proposed definitions of "bona fide offer to purchase" and "arm's-length transaction." While the definitions offered by appellants were clearer and more helpful, the Territorial Court satisfied its duty by adequately explaining the legal criteria. This duty is satisfied by a clear articulation of the relevant legal criteria in the trial judge's instructions.

## D. Whether the Court abused its discretion in excluding a portion of the testimony Michael Rudy and admitting the opinion of Terry Streeter.

A trial court's ruling regarding the admission or exclusion of evidence is reviewed for abuse of discretion.

Admission of evidence and testimony under the Federal Rules of Evidence is discretionary and is reviewed for abuse of discretion, but, to the extent the trial court's ruling turns on an interpretation of those rules, the review is plenary.

Even if such abuse of discretion is found, reversal may be avoided if the error was harmless; a non-constitutional " 'harmless error' requires a 'high[ ] probability that the evidence did not contribute to the jury's judgment of conviction.' "

*Government of the V.I. v. Petersen,* 131 F.Supp.2d 707, 709–10 (D.Virgin Islands 2001) (citations omitted).

■ The Territorial Court did not abuse its discretion in excluding a portion of Rudy's testimony and admitting Streeter's opinion. Michael Rudy, Texaco Inc.'s Corporate Secretary, was prevented from offering his opinion regarding the "intent of the transaction." The trial judge barred Rudy from offering this testimony because he had no personal knowledge of it. (App. 1321.) This ruling is supported by Rule 602 of the Federal Rules of Evidence. Appellants argue that Rudy's testimony should have been admitted under FER Rules 406 (routine business practice) and 701 (lay person may give an opinion rationally based on perception), but the Territorial Court's decision was within its discretion. And because the decision below should be reversed on other grounds, the issue would not be dispositive in any event.

The admission of Streeter's testimony was similarly within the judge's discretion and should not be overturned. Again, this should not effect this Court's ruling that the decision below should not stand.

## VI. CONCLUSION

The transfer of the property from TAL to TCI was a not "sale" nor was there a bona fide offer that triggered Creque's right of first refusal. The territorial court erred in denying appellants' motion for summary judgment. The decision will be reversed, the judgment vacated, and the case remanded to the Territorial Court

with instructions to dismiss it with prejudice.

### ORDER OF THE COURT

AND NOW, this 28th day of July, 2003, having considered the parties' submissions and arguments, and for the reasons set forth in the Court's accompanying Opinion of even date, it is hereby

ORDERED that the decision of the Territorial Court is reversed, the judgment is vacated, and the case is remanded to the Territorial Court with instructions to dismiss it with prejudice.